UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

Beyker Ortiz Moreno,

Petitioner,

v.

Bruce Scott Warden of the Northwest ICE Processing Center et al.,

Respondents.

CASE NO. 2:26-cv-03951-JNW

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

## 1. INTRODUCTION

Beyker Ortiz Moreno, a citizen of Venezuela, was granted Temporary Protected Status to live in the United States. Dkt. No. 5-2 at 2–3. He built a life in America including raising his U.S. citizen daughter with his partner. After more than three years at liberty, United States Border Patrol (USBP) re-detained him and now he awaits the outcome of his appeal to the Board of Immigration Appeals (BIA). Dkt. No. 6 ¶ ¶ ¶ 5, 9, 16. As of October 30, 2026, Ortiz Moreno had been detained for more than eleven months, and he is detained at the Northwest ICE Processing Center ("NWIPC"), in Tacoma, Washington. For the reasons below, the habeas petition is GRANTED.

## 2. BACKGROUND

Petitioner Beyker Ortiz Moreno is a Venezuelan citizen who entered the United States on June 12, 2022, without inspection or admission. Dkt. No. 5-4 at 3. That same day, USBP apprehended him, and two days later, he was paroled due to lack of bed space. *Id.*; Dkt. No. 6 ¶¶ 4–5. His parole expired on August 11, 2022. Dkt. No. 6 ¶ 5. Respondents don't dispute that, while released, he committed no crimes and complied with his immigration reporting. *See id. at 2*–3.

Ortiz Moreno held Temporary Protected Status ("TPS") from June 11, 2024, to November 21, 2025. Dkt. No. 6 ¶ 7–8. On November 23, 2025, ICE detained Ortiz Moreno in New Jersey pursuant to a warrant issued that day, following the termination of his TPS. Dkt. No. 5-3 at 2. That same day, ICE served him with a Notice to Appear starting removal proceedings. Dkt. No. 5-1 at 2.

On January 6, 2026, the Immigration Court ordered Ortiz Moreno removed to Ecuador under an Asylum Cooperation Agreement. Dkt. No. 5-6 at 2. On January 30, 2026, he filed an appeal with the BIA, which remains pending. Dkt. No. 6 ¶ 16. In early 2026, ICE transferred him to NWIPC. *See Ortiz Moreno v. Bondi*, et al., No. 3:25-cv-18779 (RK), 2026 WL 2874971, at *1 (D.N.J. Sept. 24, 2026).

On February 6, 2026, the U.S. District Court for the District of New Jersey ("New Jersey District Court") issued an order granting in part his habeas petition, determining that he was unlawfully detained under 8 U.S.C § 1225(b) and directing Respondents to provide him with a bond hearing under 8 U.S.C. § 1226(a). Dkt. No. 6 ¶ 13; *see Ortiz* Moreno, 2026 WL 2874971, at *1.

On February 11, 2026, Ortiz Moreno was denied bond at a hearing before Immigration Judge ("IJ") John Odell in Tacoma, who checked a box marked "Flight Risk" without supplying any reasoning. Dkt. No. 5-5 at 2.

Ortiz Moreno then filed an amended petition in the New Jersey District Court arguing that his bond hearing was unfair. On September 24, 2026, the New Jersey District Court ruled that "Petitioner has not shown that his bond hearing was fundamentally unfair" but commented that he may raise another claim "in a future petition in the district of confinement." *Ortiz* Moreno, 2026 WL 2874971, at *2.

Ortiz Moreno filed his current habeas petition on October 15, 2026, challenging his re-detention under due process, his indefinite and prolonged detention, and the inadequacy of his bond hearing. Dkt. No. 1 at 6–19. Respondents contend that the abuse of writ doctrine bars Ortiz Moreno's arguments and that any new arguments should be disregarded given his opportunity to raise them in earlier petitions. Dkt. No. 4–5. Ortiz Moreno filed a traverse on November 4, 2026, arguing that he "should not be deprived of meaningful judicial review of these constitutional claims merely because prior counsel did not fully develop or separately present them in the earlier proceedings," and that his "re-detention without adequate procedural protections violates due process and warrants immediate release." Dkt. No. 7 at 3–4.

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## 4. DISCUSSION

### 4.1 The Court declines to apply the abuse of writ doctrine.

The abuse of writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." *Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011). A successive petition raising "identical grounds for relief as a prior petition" must be dismissed unless Petitioner can either (1) show cause as to why a successive petition was brought and the prejudice that would result from refusing to consider it, or (2) show that a fundamental miscarriage of justice would result from failure to entertain the claim. *Eldridge v. Howard*, 70 F.4th 543, 551 (9th Cir. 2023).

Ortiz Moreno could have challenged his re-detention in his New Jersey petitions. But as Respondents acknowledge, the doctrine "generally" forbids such

claims; it does not always do so. Dkt. No. 4 at 4. Respondents do not defend the re-detention on its merits, Ortiz Moreno's liberty is at stake, and nothing suggests he held the claim back to gain an advantage. See Dkt. No. 7 at 3. His case merits a decision on the merits, not "dismissing his [p]etition over a technicality when there is no clear abuse of the system" because that "would be a miscarriage of justice." *Rocha Carballo v. Hernandez*, No. 2:26-CV-02848-SAB, 2026 WL 2641379, at *2 (W.D. Wash. Sept. 8, 2026).

**4.2 Ortiz Moreno's re-detention violates due process.**

To determine what process Respondents must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and Respondents' interest. *Id.* This Court has applied that test under similar circumstances and found that due process requires pre-deprivation notice and a hearing before revoking a noncitizen's release order and re-detaining them. *See Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7 (W.D. Wash. Oct. 7, 2025). Many courts in this District have reached the same conclusion.[1]

---

[1] *See, e.g.*, *Aslan v. Wamsley, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026)* (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (applying *Mathews*, 424 U.S. at 332)); *Tessema v. Bondi*, No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even

The Court finds no reason to distinguish Ortiz Moreno's case from similar cases in which ICE revoked a noncitizen's release without providing pre-deprivation notice or an opportunity to be heard. Considering the first *Mathews* factor, Ortiz Moreno has a strong liberty interest in not being detained. Indeed, "Petitioner's interest in not being detained is 'the most elemental of liberty interests.'" *Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *3 (W.D. Wash. Dec. 30, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."). That liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

Second, without notice and a pre-deprivation hearing, the risk of erroneous deprivation is high. Notice and a hearing would have let Ortiz Moreno present his compliance, his TPS history, and his family ties before ICE took him into custody. Respondents offer no specific arguments or reasons why the risk of erroneous deprivation would be minimal here. Rather, Respondents argue that Ortiz Moreno had an opportunity to raise re-detention issues in his prior habeas petitions rather than engaging with the substance of his arguments. Dkt. No. 4 at 5. That Ortiz Moreno may have had a previous opportunity to argue the constitutionality of his re-detention does not answer what process the Constitution required first.

---

when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process).

Third, Respondents' interest in re-detaining previously released noncitizens without a hearing is low. *See E.A. T.-B. v. Wamsley,* 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Nothing required ICE to act before holding a hearing. Respondents offer no arguments specific to Ortiz Moreno and no reason why this interest cannot be furthered while also providing individuals on conditional release with notice and an opportunity to be heard before their release is terminated. That Ortiz Moreno's TPS expired does not, by itself, justify stripping him of his due process rights. *See Rivas v. Mullin*, No. C26-2606-JLR, 2026 WL 2620078, at *3 (W.D. Wash. Sept. 4, 2026) (finding that petitioner's re-detention after the expiration of his TPS without notice or an individualized consideration of his circumstances violated due process). Respondents do not dispute that Ortiz Moreno complied with his reporting obligations and has no criminal record. In sum, due process requires notice and a pre-detention hearing here, as it does in similar cases.

All *Mathews* factors favor Ortiz Moreno and support finding that his detention violates procedural due process. *Aslan*, 2026 WL 238675, at *3 (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Ortiz Moreno did not receive a hearing before his re-detention. While he did receive a post-deprivation hearing, this hearing didn't cure the violation. IJ Odell's order denies bond by checking a box marked "Flight Risk." Dkt. No. 5-5 at 2. It makes no findings, cites no evidence, and offers no reasoning. *Id.* at 2–3. Respondents, who were ordered to show cause, filed no transcript or recording, and their return does not say what the IJ relied on. *See* Dkt. No. 7 at 1–2. To be clear, the Court is not reweighing the evidence or substituting its judgment for the IJ's. *See Martinez v. Clark,* 124 F.4th 775, 785 (9th

Cir. 2024). The problem is that the IJ did not create a record of his reasoning—at least not one before the Court—so there is nothing to review for abuse of discretion. *See id.* at 786 (due process "requires immigration courts to make contemporaneous records of bond hearings"). The order does not mention that Ortiz Moreno has no criminal record, that ICE arrested him at its own office, that he held TPS until days before his arrest, that he has a U.S.-citizen daughter, or that his removal appeal is pending. A hearing that produced no reviewable explanation cannot stand in for the notice and hearing ICE never provided.

Accordingly, his detention violates procedural due process, and he must be released. And having found that Oritz Moreno's re-detention violates due process, the Court declines to reach his other claims.

## 5. CONCLUSION

Accordingly, the Court ORDERS:

1. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.
2. Respondents must RELEASE Ortiz Moreno within TWENTY-FOUR (24) hours of this order, subject to the conditions of his most recent parole agreement.
3. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Ortiz Moreno has been released from custody and informing the Court of the date and time of his release.
4. Respondents may not re-detain Ortiz Moreno during the pendency of his

removal proceedings without first giving him written notice of the basis for the proposed re-detention and a hearing on that notice before an immigration judge, held before re-detention, at which the Respondents bear the burden of justifying it.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 23rd day of November, 2026.

Jamal N. Whitehead
United States District Judge